UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TIMOTHY ANDREW ROODENBURG,

        Plaintiff,

    -v-                   5:23-CV-963 (DNH/MJK)

PAUL SANDY, Chief of Police, City of
Cortland; LT. CHEYENNE CUTE,
City of Cortland Police Lieutenant;
DEPUTY CHIEF DAVID GUERRERA,
City of Cortland Police Deputy Chief;
JIM SPONAUGLE, City of Cortland
Police Commission Chairman; TRISH
HANSEN, City of Cortland Commission
Member; LIZ STARR, City of Cortland
Police Commission Member; CHERYL
MICHAELES, City of Cortland Police
Commission Member, MICHAEL
WHITLOCK, City of Cortland Police
Commission Member; WAYNE SCHUTT,
II, City of Cortland Common Council
Member; KATHRYN SILLIMAN, City
of Cortland Common Council Member;
MARY CLARE PENNELLO, City of
Cortland Common Council Member;
PATRICIA LANE, City of Cortland
Common Council Member; SETH
THOMPSON, City of Cortland Common
Council Member; BILL CARPENTER,
City of Cortland Common Council
Member; THOMAS MICHALES, City of
Cortland Common Council Member; CITY
OF CORTLAND,CORTLAND, NY;
CORTLAND MAYOR SCOTT STEVE,
City of Cortland Mayor; CORPORATION
COUNCIL AJ  MELDRIM, City of Cortland
 Corp Counsel; JAY A. SUPNICK, PH.D.,

APBB, City of Cortland Police Department
Psychiatrist,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                          OF COUNSEL:

TIMOTHY ANDREW ROODENBURG
Plaintiff, *pro se*
P.O. Box 173
DeRuyter, NY 13052

BARGNESI BRITT PLLC               JASON T. BRITT, ESQ.
Attorneys for Defendant Jay       JULIE M. BARGNESI, ESQ.
   A. Supnick, Ph.D, ABPP
350 Main Street, Suite 1105
Buffalo, NY 14202

GOLDBERG SEGALLA LLP              DAVID E. LEACH, ESQ.
Attorneys for Defendants          REBECCA R. RABIDEAU, ESQ.
5786 Widewaters Parkway
Syracuse, NY 13214

DAVID N. HURD
United States District Judge


**DECISION and ORDER**

## I. **INTRODUCTION**

On August 8, 2023, Timothy Andrew Roodenburg ("Roodenburg" or

"plaintiff"), acting *pro se*, filed a complaint pursuant to 42 U.S.C. § 1983 ("§

1983") against defendants City of Cortland Police ("Cortland Police") Chief

Paul Sandy, Cortland Police Lieutenant Cheyenne Cute, Cortland Deputy

Police Chief David Guerrera, Cortland Police Commission Chairman Jim Sponaugle, Cortland Police Commission Members Trish Hansen, Liz Starr, Cheryl Michales, and Michael Whitlock, Cortland Common Council Members Wayne Schutt II, Kathryn Silliman, Mary Clare Pennello, Patricia Lane, Seth Thompson, Bill Carpenter, and Thomas Michales, the Cortland Police Psychiatrist, and the City of Cortland.  Plaintiff, who has since filed a third amended complaint, alleges that he was deprived of his constitutional right to procedural and substantive due process.  *See* Dkt. No. 111.

Defendant City of Cortland Police Department Psychiatrist Jay A. Supnick, Pd.D., ABPP ("Supnick") has now moved to dismiss plaintiff's third amended complaint as to him pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) or, in the alternative, for a more definite statement pursuant to Rule 12(b)(e).[1]  Dkt. No. 115.  That motion has been fully briefed and will be decided on the papers and without oral argument.  Dkt. Nos. 111, 115, 120, 122.

## II.  BACKGROUND

### A.  Procedural History

After filing his initial action in this matter, Roodenberg moved to amend his complaint on December 12, 2023, which was granted.  Dkt. Nos. 52, 62.

---

[1] As explained *infra*, plaintiff first filed an amended complaint to replace unnamed defendant "Cortland Police Psychiatrist" with named defendant Supnick.

The purpose of this amendment was to replace unnamed defendant "Cortland Police Psychiatrist" with Supnick. *See* Dkt. No. 52. On July 16, 2024, Roodenburg filed a first amended complaint ("FAC"). Dkt. No. 63.

On September 11, 2024, Supnick moved to dismiss plaintiff's claims against him pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) or, in the alternative, to allow for a more definite statement of the allegations against him pursuant to Rule 12(e). Dkt. No. 78-5. On April 2, 2025, Supnick's motion to dismiss was granted. Dkt. No. 91. But the Court permitted Roodenberg thirty days to file a second amended complaint ("SAC") with respect to his claims against Supnick, which he then filed on April 28, 2025. *Id.*; *see also* SAC, Dkt. No. 93.

Thereafter, counsel for all defendants aside from Supnick filed a motion for an extension of the deadline to file an answer to the SAC. Dkt. No. 95. In that motion, defendants' counsel asserted that plaintiff's SAC made changes beyond what this Court's Order dismissing plaintiff's FAC as to Supnick allowed for, *i.e.*, plaintiff added new facts and claims against the defendants. *See id.* To address these concerns, U.S. Magistrate Judge Mitchell J. Katz conducted a video conference with the parties on May 28, 2025. *See* Dkt. Nos. 100, 108. Thereafter, the parties conferred and agreed to permit plaintiff to file a Third Amended Complaint ("TAC") setting forth all of his claims against Supnick, while also reaching consensus that plaintiff's claim against

defendants would be limited to a § 1983 claim for the deprivation of his due process rights. Dkt. No. 109. Not long after, plaintiff filed his TAC and Supnick filed his third motion to dismiss.[2] Dkt. Nos. 111, 115.

### B. Factual Background

This case arises from plaintiff's employment as a police officer with the Cortland Police. *See generally* TAC, Dkt. No. 111. On December 21, 2021, plaintiff received a conditional offer of employment as a police officer with Cortland Police. *Id.* at ¶ 5. One condition of employment was the completion of an 18-month probationary period. *Id.* Another was the passage of both a medical and psychological examination. *Id.* Thereafter, plaintiff completed the medical exam and was scheduled to take a psychological exam at the Cortland County personnel office.[3] *Id.*

When he arrived to complete the psychological examination, Roodenberg alleges that, two hours into his psychological exam, the personnel officer conducting the exam informed him they received a call from defendant Cortland Police Chief Paul Sandy ("Chief Sandy"). TAC at ¶ 5. Chief Sandy

---

[2] In its previous Decision and Order and accounting for plaintiff's *pro se* status, this Court construed plaintiff's first amended complaint as bringing a separate claim for discriminatory termination on the basis of his mental health in violation of the Americans with Disabilities Act of 1990. Dkt. No. 91. That claim was rejected. Further, plaintiff has since expressly indicated in his Third Amended Complaint that he did not intend to bring such a claim. *See* TAC. Accordingly, plaintiff's third amended complaint shall be construed as bringing the claims set forth *infra*.

[3] Plaintiff's TAC, like his prior pleadings, offers little to no detail about precisely when his medical and psychological examinations were conducted. TAC ¶ 5.

requested that Roodenberg's psychological examination be terminated because plaintiff had already completed a psychological examination for a different agency and Chief Sandy was concerned Roodenberg would fail the exam and jeopardize his employment with the Cortland Police. *Id*. Plaintiff claims he was unaware that Chief Sandy had any concerns about his psychological examination before. *Id*. According to plaintiff, Chief Sandy made reference[4] to a May 11, 2022 conversation he had with defendant Supnick, a "police psychiatrist[,]" regarding Roodenberg. *Id*. During that conversation, plaintiff alleges that Chief Sandy and Supnick discussed plaintiff's two prior incidents of misconduct.[5] In light of these incidents, Supnick recommended that Roodenberg be terminated, asserted that plaintiff's conduct "was disrespectful to the badge, the citizens and command[,]" and concluded that plaintiff failed to learn from his first

---

[4] However, it is unclear when Sandy made this reference, *i.e.*, whether he made it during the call to the Cortland County personnel office to intervene in plaintiff's psychological examination or at another point in time.

[5] Roodenberg alleges the letter Sandy sent to DCJS pertained to two events. First, it addressed an internal investigation regarding plaintiff's use of a motor vehicle while intoxicated on February 28, 2022. TAC. ¶ 6. Second, it discussed an internal investigation of an April 20, 2022 incident at a local restaurant where certain police officers, including Roodenberg, acted in a disrespectful manner. *Id*. ¶ 8. Plaintiff disputes the merits of either of these internal investigations and claims that Sandy misrepresented his conduct in the letter. *See generally* TAC. Ultimately, on May 12, 2022, plaintiff was informed by letter that he failed to complete his probationary period, and his employment was discontinued effective May 19, 2022. *Id*. at ¶ 10. Plaintiff now brings this complaint under 42 U.S.C. § 1983 arguing that all defendants were acting under the color of state law wherein they deprived plaintiff of his constitutional right to due process. As it pertains to this motion, plaintiff contends that he was entitled to a professional interaction with Jay Supnick regarding his mental state before Supnick reached medical conclusions, which he provided to Sandy, that yielded an unfavorable employment outcome and loss of certification to work in law enforcement.

incident of misconduct before engaging in the second incident. *Id.* Plaintiff claims Supnick advised Chief Sandy that he "would continue to be a disciplinary problem [. . .] for as long as he was employed." *Id.*

Plaintiff contends that Chief Sandy "failed to supply supporting documentation or interview materials regarding the termination of the psychological exam" but did "provide a letter to the [New York State Division of Criminal Justice Services ("DCJS")]" stating that the psychological exam was a "condition for employment under Civil Regulations." TAC at ¶ 5. In Roodenberg's view, if Chief Sandy had any concerns about plaintiff's off-duty behavior, he should not have intervened in the conducting of his psychological evaluation. *Id.* Plaintiff also contends that Roodenberg failed to supply any clinical evaluations, reports, or notes from Supnick as to plaintiff's mental status to suggest he was unfit to continue his employment as a police officer in Cortland. *Id.* Plaintiff asserts that when Supnick provided Chief Sandy with a "medical evaluation" as to his mental status without ever interacting with him, it was an act of misconduct. *Id.*

Plaintiff argues Supnick violated his Fourteenth Amendment Rights to procedural and substantive due process when, acting under the color of state law, he issued a professional psychological opinion as to plaintiff's mental fitness without conducting "a clinical examination, personal interview, or [a] review of any mental health records." TAC at ¶ 5. Further, plaintiff takes

issue with Supnick's opinion, which labeled him as "suffering from a personality disorder, being out of control, and unsuitable for duty" because the opinion is based entirely on hearsay provided by Chief Sandy without "any objective or clinical basis." *Id.* In support, plaintiff points to a November 1, 2023 email where Supnick acknowledged having "no records of ever evaluating [plaintiff]" as support that Supnick's opinion was both speculative and non-clinical. *Id.*

Plaintiff contends that Supnick's opinion violated his procedural due process rights by depriving him of: 1) notice; 2) an impartial evaluation; and 3) the opportunity to be heard. TAC at ¶ 5. Plaintiff further asserts that Supnick's opinion violated his substantive due process rights by "interfering with his liberty interest in holding police certification without a fair or rational basis."[6] *Id.* Further, plaintiff argues Supnick's actions "breached Principle 7.3 of the American Psychiatric Association's Code of Ethics, commonly known as the Goldwater Rule, which prohibits psychiatrists from rendering professional opinions about individuals they have not personally examined." *Id.* As a result of Supnick's alleged ethical breach, plaintiff contends he was decertified by the DCJS without any formal process, clinical

---

[6] Plaintiff's lawsuit seeks to have the DCJS reinstate his police certification. *See* Dkt. No. 111. Construing plaintiff's allegations in a light most favorable, he has alleged that Supnick provided Sandy with an opinion regarding his fitness for employment with the Cortland Police. *Id.* While plaintiff has alleged the opinion contributed to the loss his certification, his pleadings nonetheless fail to shed light as to how Supnick's opinion ultimately relates to, or played into, his decertification.

report, or hearing and that he was "effectively barr[ed] […] from future employment as a police officer[.]"  *Id.*

Finally, Plaintiff's TAC clarifies that he brings no employment discrimination claims or Americans with Disabilities Act of 1990 ("ADA") claims.  *Id.*  Rather, plaintiff's lawsuit is premised on violations of his due process rights and asserts that he now seeks the reinstatement of his New York State Police Certification.  *Id.*

Supnick has now moved to dismiss plaintiff's TAC.  Dkt. No. 115.  The motion has been fully briefed and will be resolved on the basis of the parties' submissions and without oral argument.  Dkt. Nos. 111, 115-3, 120-3, 122.

## III.  LEGAL STANDARD

### A.  Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must be enough to elevate the plaintiff's right to relief above the speculative level.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  So while legal conclusions can provide a framework for the complaint, they must be supported with meaningful allegations of fact.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

To assess this plausibility requirement, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable

inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In doing so, the court generally confines itself to the facts alleged in the pleading, any documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)).

### B. <u>Rule 12(b)(e)</u>

A motion for a more definite statement may be granted where "a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." FED. R. CIV. P. 12(e). Motions pursuant to Rule 12(e) are not favored and are appropriately granted where "the complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." *Bower v. Weisman*, 639 F. Supp. 532, 538 (S.D.N.Y. 1986) (internal quotation marks and citation omitted). "The purpose of the complaint is to 'inform the defendant as to the general nature of the action and as to the incident out of which a cause of action arose.'" *Greater N.Y. Auto. Dealers Ass'n v. Envtl. Sys. Testing*, 211 F.R.D. 71, 76 (E.D.N.Y. 2002) (quoting *Bower*, 639 F. Supp. at 538). Rule 12(e) is "designed to remedy unintelligible pleadings, not merely to correct for lack of detail." *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 35 (S.D.N.Y. 1992), aff'd 23 F.3d 398 (2d

- 10 -

Cir. 1994) (citations omitted). Therefore, a motion for a more definite statement should be granted only if the complaint is missing a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8.

## IV.  DISCUSSION

As was the case in the prior motion to dismiss decided by this Court, plaintiff's complaint is construed as bringing a § 1983 claim against Supnick for violating his constitutional right to substantive and procedural due process where, despite having had no interaction with or having been examined by Supnick, Supnick rendered an unfavorable employment opinion regarding plaintiff to defendant Chief Sandy.  TAC at ¶ 5.  Supnick again moves to dismiss plaintiff's complaint on the basis that it fails to state a plausible claim for which relief could be granted pursuant to Rule 12(b)(6) or, in the alternative, that their motion for a more definite statement pursuant to Rule 12(e) be granted.  Supnick's Mem at 4–5.[7]

### A.  Due Process

Plaintiff contends that Supnick violated his Fourteenth Amendment rights to procedural and substantive process where, acting under the color of state law, he issued a professional psychological opinion regarding plaintiff's

---

[7] Pagination corresponds to CM/ECF headers.

mental fitness without conducting "a clinical examination, personal interview, or review of any mental health records." TAC at ¶ 5. Supnick now moves to dismiss, arguing that plaintiff's complaint fails to allege either that Supnick possessed the duty or authority to make employment decisions regarding Roodenberg or that Roodenberg possessed any property interest in his probationary employment with the Cortland Police that Supnick has, or even could have, deprived him of. Supnick's Mem., Dkt. No. 115-3 at 4.

§ 1983 provides in relevant part that "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subject . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in action at law." 42 U.S.C. § 1983. § 1983 "is not itself a source of substantive rights," but instead provides "a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Barker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979).

The Due Process Clause of the Fourteenth Amendment prohibits a state from "depri[ving] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause contains both procedural and substantive components. *Home for Aged of Little Sisters of the Poor v. McDonald*, 711 F. Supp. 3d 81, 114 (citing *Zinermon v. Burch*, 494

U.S. 113, 125 (1990)).  The procedural component applies where government action results in the alleged deprivation of a constitutionally protected interest without sufficient procedural safeguards.  *Id.*  By contrast, the substantive component bars "certain government action irrespective of the fairness of the procedures used to implement them."  *Hurd v. Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir. 2021) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998)).  "Substantive due process rights safeguard persons against the government's exercise of power without any reasonable justification in the service of a legitimate governmental objective."  *Id.* (quoting *Southerland v. N.Y.C.*, 680 F.3d 127, 151 (2d Cir. 2012) (cleaned up). The Court will now address plaintiff's procedural and substantive due process claims in turn.

### 1.  Procedural Due Process

*First*, plaintiff contends that Supnick's opinion violated his procedural due process rights because it deprived him of notice, an impartial psychological evaluation, and the opportunity to be heard.  TAC at ¶ 5.  Supnick seeks to dismiss this claim, arguing that plaintiff fails to assert any property interest in his probationary employment with the Cortland Police.  Supnick's Mem., Dkt. No. 115-3 at 4.  Supnick also contends that he did not have any duty or authority to make employment decisions regarding plaintiff and thus could not have deprived him of employment.  *Id.*  Finally, Supnick argues that

- 13 -

plaintiff has failed to identify any other constitutional right or collective bargaining agreement provision that was violated by his termination. *Id.* at 5.

To prevail on a Fourteenth Amendment procedural due process claim at this posture, a plaintiff must plausibly allege that they "possessed a protected liberty or property interest, and that he was deprived of that interest without due process." *McMenemy v. City of Rochester*, 241 F.3d 279 (2d Cir. 2001) (quoting *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998) (per curiam), *cert. denied*, 525 U.S. 907 (1998)).

Under New York Law, "[i]t is well settled that a probationary employee, unlike a permanent employee, has no property rights in his position and may be lawfully discharged without a hearing and without any stated specific reason." *Finley v. Giacobbe*, 79 F.3d 1285, 1297–98 (2d Cir. 1996) (quoting *Meyers v. City of New York*, 208 A.D. 2d 258, 262 (2nd Dep't 1995)); *see also York v. McGuire 63* N.Y.2d 760, 761 (1984) (holding that a probationary employee may be terminated without a hearing or statement of reasons); *see also Flood v. Cty. of Suffolk*, 820 F.Supp. 709, 713 (E.D.N.Y. May 14, 1993) (holding that a probationary employee had no property right in her position).

As a threshold matter, and as this Court has already ruled in its previous Decision & Order, probationary employees do not have a property interest in their employment, and no reason or hearing need be provided to them for

terminating their employment.  *See* Decision & Order, Dkt. No. 91.  As such, the question now before this Court is whether Supnick's alleged conduct otherwise deprived plaintiff of some property or liberty interest.

While not expressly mentioned in plaintiff's TAC, Roodenberg appears to bring a stigma-plus claim against Supnick in his opposition to Supnick's pending motion.  *See* Pl's Opp'n, Dkt. No. 120-3 at 4–5.  Plaintiff contends that Supnick's psychiatric opinion damaged his reputation to such an extent that he may now assert a liberty interest.  *Id*. at 4.  Specifically, he argues that the statements in Supnick's opinion stigmatized him, directly contributed to the loss of his police certification, and foreclosed future employment opportunities for him in law enforcement.  *Id*. at 4–5.  However, "[a] *pro se* plaintiff may not raise 'entirely new' causes of action for the first time in his opposition papers, but the Court may consider new claims appearing for the first time in briefing if 'the claims could have been asserted based on the facts alleged in the complaint.'"  *Davila v. Lang*, 343 F. Supp. 3d 254, 267–68 (S.D.N.Y. 2018) (internal citations omitted).

Probationary employees may "'invoke the protections of the Due Process Clause' where they have suffered a loss of reputation 'coupled with the deprivation of a more tangible interest, such as government employment."  *Segal v. N.Y.C.*, 459 F.3d 207, 212 (2d Cir. 2006) (quoting *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004)).  "Such an action is referred to as a

stigma-plus claim; it involves an 'injury to one's reputation (the stigma) coupled with the deprivation of some "tangible interest" or property right (the plus), without adequate process.'" *Id.* (quoting *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003)). A stigma-plus claim is properly addressed at this juncture "[b]ecause stigma plus is a species within the phylum of procedural due process claims[.]" *Segal*, 459 F.3d at 213. "Like any procedural due process claim, a stigma-plus claim enforces a limited but important right: the right to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* (quoting *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970)) (cleaned up).

To succeed on a stigma-plus claim at this pre-answer stage, "a plaintiff must plausibly allege: (1) a defamatory statement; (2) 'some tangible and material state-imposed burden in addition to the stigmatizing statement'; and (3) a lack of process adequate to justify the state's action." *Velez v. Levy*, 401 F.3d 75, 87 (2d Cir. 2005) (internal citations omitted); *see also Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (internal citations omitted). Plaintiff must allege "the utterance of a statement about [him] that is injurious to [his] reputation, 'that is capable of being proved false, and that he or she claims is false[.]'" *Velez*, 401 F.3d at 87. And "[t]he state-imposed burden or alteration of status must be '*in addition* to the stigmatizing statement.'" *Id.* (emphasis in original). Finally, "[t]he defamatory statement must be sufficiently public to create or threaten a stigma; hence, a statement

made only to the plaintiff, and only in private, ordinarily does not implicate a liberty interest." *Id*. (citing *Donato v. Old-Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 631–32 (2d Cir. 1996)).

Even if a plaintiff's allegations sufficiently "demonstrate a government-imposed stigma, such defamation is not, absent more, a deprivation of a liberty or property interest protected by due process." *Sadallah*, F.3d at 38 (citing *Siegert v. Gilley*, 500 U.S. 226, 233 (1991)); *see also DiBlasio*, 344 F.3d at 302 ("'Stigma plus' refers to a claim brought for injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' … (the plus), without adequate process."); *see also Valmonte v. Bane*, 18 F.3d 992, 1002 (2d Cir. 1994) (stating that even where the plaintiff demonstrates that the government has implicated her liberty interest, she "still must show that the procedural safeguards of her interest established by the state are insufficient to protect her rights").

Upon review, plaintiff made no mention of a stigma-plus claim in his TAC. But the TAC does include allegations that that Supnick provided Chief Sandy with a psychological opinion that concerned plaintiff's fitness for employment in law enforcement, and that this opinion caused him both reputational harm and barred him from future employment as a police officer.  TAC ¶ 5. Accordingly, the Court finds that the facts contained in the TAC are sufficient for plaintiff to now assert a stigma-plus claim.

Turning to whether plaintiff's stigma-plus claim should survive at this pre-answer stage, the Courts first finds that plaintiff's TAC makes no mention of a defamatory statement made by Supnick. *See generally* TAC. It makes no allegations of Supnick's opinion being false or containing untrue statements. Rather, plaintiff's complaint takes issue with Supnick's opinion being "speculative and nonclinicial."[8] It alleges no specific statement that is both injurious to his reputation and capable of being proven false.

Next, plaintiff has not alleged that any statements made by Supnick were sufficiently public to stigmatize plaintiff or otherwise cause the requisite reputational harm to implicate a liberty interest. Rather, plaintiff contends that Chief Sandy solicited an opinion from Supnick regarding plaintiff's fitness as a law enforcement officer, received that opinion, and ultimately made an employment decision that was adverse to plaintiff. The TAC contains no allegations that Chief Sandy further disseminated Supnick's opinion. Nor has plaintiff provided detailed allegations about the proximity in time of Supnick's opinion to his discharge as a probationary employee or about how the psychological opinion was relied upon to reach a different conclusion. *See Donato*, 96 F.3d at 631 ("Stigmatizing statements by the government about an employee upon her discharge only implicate a liberty

---

[8] In the TAC, plaintiff asserts that issuing a psychological opinion without direct observation is unethical, unconstitutional, and violative of the American Psychiatric Association's Code of Ethics. However, plaintiff did not allege that Supnick made a false statement.

interest when there is also public disclosure [. . .] This requirement is "satisfied where the stigmatizing charges are placed in the discharged employee's personnel file and are likely to be disclosed to prospective employers.")

Finally, plaintiff has not alleged that Supnick took further adverse action against him. As best as this Court can tell, the extent of Supnick's involvement here was to provide an opinion to defendant Chief Sandy, and as part of that opinion, he stated that plaintiff was unfit to work in law enforcement. However, there are no allegations that Supnick took further action to affect the terms of plaintiff's employment.

Upon review, plaintiff has failed to plausibly allege that Supnick violated his procedural due process rights. Accordingly, this claim against Supnick will be dismissed.

### 2. Substantive Due Process

Plaintiff also contends that Supnick violated his Fourteenth Amendment substantive due process rights when he issued a psychological opinion that led to the loss of his probationary employment and his license to serve in law enforcement. TAC ¶ 5. Specifically, he asserts that Supnick's opinion "interfer[ed] with his liberty interest in holding police certification without a fair or rational basis." *Id.* But when Supnick moved to dismiss, plaintiff offered no new arguments regarding his substantive due process claim,

- 19 -

instead advancing his stigma-plus claim in response.  *See* Pl's Opp'n, Dkt. No. 120-3.  In response, Supnick argues that he played no role in plaintiff's subsequent termination from the Cortland Police Department or any loss of certification and had no power to affect or take away either.  Supnick's Reply, Dkt. No. 122-1 at 4–5.

"For a substantive due process claim to survive a Rule 12(b)(6) dismissal motion, it must allege governmental conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Velez, 401 F.3d at 93 (quoting *Cnty. of Sacramento*, 523 U.S. at 847 n. 8); *see also Poe v. Leonard*, 282 F.3d 123, 139 (2d Cir.2002).

Insofar as plaintiff's substantive due process claim here was intended to serve as a claim distinct from his procedural due process and stigma-plus claim, it nevertheless does not rise to the requisite level of harm required in order for a substantive due process claim to survive dismissal at this stage. While plaintiff alleges that Supnick's opinion was unethical and that he did not receive notice or an opportunity to be heard in response to Supnick's opinion, he has not plausibly alleged any conduct which was sufficiently egregious at this stage to make out a substantive due process claim.  *See* Velez, 401 F.3d at 94 (quoting *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 252 (2d Cir. 2001) ("The measure of what is conscience-shocking is no calibrated yard stick. Nevertheless, "malicious and sadistic" abuses of

power by government officials, intended to "oppress or to cause injury" and designed for no legitimate government purpose, "unquestionably shock the conscience.") Accordingly, insofar as plaintiff seeks to bring a distinct substantive due process against Supnick, this claim will be denied.

## B. Leave to Amend

Plaintiff's opposition to Supnick's motion asks that the Court allow him leave to further amend rather than dismissing his claims outright with prejudice. Pl's Opp'n, Dkt. No. 120-3 at 8. Leave to amend "shall be freely given when justice so requires." *See* Fed. R. Civ. P. 15(a); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Id.*

At this point, the Court does not find that permitting leave to Roodenberg to further amend his complaint would be futile. In light of the fact that plaintiff has filed four iterations of this complaint to date, he will be given one final opportunity to amend his complaint as to Supnick with respect to his due process and stigma plus claims. Plaintiff will be given until May 20,

2026 to file a Fourth Amended Complaint consistent with this Court's Decision & Order.

## V.  CONCLUSION

Therefore, it is

ORDERED that

1.  Supnick's motion to dismiss (Dkt. No. 115) is GRANTED;

2.  Plaintiff's Third Amended Complaint (Dkt. No. 111) is DISMISSED as to Supnick;

3.  Plaintiff has until May 20, 2026 to file a Fourth Amended Complaint;

4.  If Plaintiff fails to file a Fourth Amended Complaint by May 20, 2026, the Clerk is directed to close the file and enter a judgment accordingly without further Order of the Court.

The Clerk of the Court is directed to terminate the pending motion and set deadlines accordingly.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  April 22, 2026
        Utica, New York.